# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-1411

CARMEN L. ENCARNACION, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 27, 2022*                                                 Decided May 18, 2023)

*Julia N. Gieseking*, of Grosse Pointe, Michigan, with whom *Victoria R. Tamayo*, of Largo, Florida, was on the brief, for the appellant.

*Amanda Radke*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Drew A. Silow*, Deputy Chief Counsel; and *Lisa McCrea*, were on the brief, all of Washington, D.C., for the appellee.

Before TOTH, FALVEY, and JAQUITH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a concurring opinion. FALVEY, *Judge*, filed an opinion concurring in part and dissenting in part.

TOTH, *Judge*: Carmen L. Encarnacion, surviving spouse of Army veteran Idilio R. Aparicio, appealed a June 2020 Board decision that dismissed the veteran's claim for a higher rating for a right knee condition. The Board concluded that it lacked jurisdiction to consider a July 2018 Notice of Disagreement (NOD) because it sought to challenge the implementation of a May 2018 Board decision by the agency of original jurisdiction (AOJ). On January 30, 2023, the Court issued a decision vacating the 2018 and 2020 Board decisions and remanded the matter. We agreed with the Board that an AOJ does not issue a "decision" of the Secretary affecting the provision of benefits under 38 U.S.C. § 511 when it implements a Board decision without independently resolving any issue. Because such actions are ministerial rather than adjudicative in nature, it is not possible to appeal a pure implementation of a grant of benefits; there is technically no "decision" to appeal. But we also concluded that the Board did not discharge its duty to consider whether the attempt to appeal such implementation by filing an NOD could be understood as a

---

* Syracuse University College of Law hosted oral argument. The Court thanks the law school for its hospitality.

request for reconsideration by the Board Chairman of the 2018 Board decision. So, we remanded with instructions for the Board to do so.

The Secretary has moved for reconsideration of our decision on various grounds. First, he contends that the Court failed to consider the effect of his *Solze* notice that the Board had already construed the appellant's July 2018 NOD as a request to reconsider the May 2018 decision; thus, vacatur of the June 2020 decision and remand for the Board to make the same determination again serves no purpose. Second, the Secretary asserts that the Court had no jurisdiction over the May 2018 Board decision, and thus lacked the authority to vacate it, because that decision had not been appealed. Third, and relatedly, the Secretary maintains that our vacatur of the May 2018 decision interferes with the authority and ability of the Board Chairman to take appropriate action regarding reconsideration of that decision. The Secretary urges us, once again, to affirm the June 2020 decision.

The Court grants reconsideration and agrees, at least in one aspect, with the Secretary. We thus rescind the vacatur of the May 2018 Board decision. The Court declines, however, to alter its analysis regarding vacatur of the June 2020 Board decision or the Agency's duty to consider whether Ms. Encarnacion's July 2018 NOD constitutes a motion to reconsider the May 2018 Board decision. Once an issue has been properly presented to the Court for resolution, the Board may not wrest the issue from our consideration through unilateral action. If that was not clear from our earlier decision, we make it so now.

Thus, we grant reconsideration, withdraw our prior decision, and issue this one in its stead. What follows from here is principally a restatement of the earlier decision vacating the June 2020 Board decision, modified only slightly to address matters raised in the Secretary's reconsideration motion.

## I. BACKGROUND

This case carries a long and complex procedural history that we'll attempt to simplify. It began in 2009 when the now-deceased veteran filed an informal claim for benefits, including a request to reopen a previously denied compensation claim for a right knee condition.[1] With relative speed, VA reopened the claim, granted service connection, and assigned a 10% rating with an

---

[1] While the veteran had over 10 matters pending before the Agency at the time he passed away, only the right knee claim is at issue in this appeal.

October 14, 2009, effective date. The veteran appealed to the Board, seeking a higher rating and an earlier effective date, but passed away while awaiting a decision.

Shortly after his death, Ms. Encarnacion filed two claims—one for dependency and indemnity compensation (alleging that the veteran's death was service connected) and one for accrued benefits (seeking substitution and the right to continue pursuing any pending claims). "Although it does not appear that a formal determination was made, by the AOJ's actions it is clear [it] approved her request to substitute and afforded her the appropriate notice rights." R. at 182. Since Ms. Encarnacion filed the claims in 2011, the Board addressed the right knee claim five times, dismissing it, remanding it, and finally deciding it. This appeal centers on the Board's May 2018 decision, which adjudicated the merits of the claim.

In that decision, the Board granted an initial rating of 10%, but no higher, for right knee limitation of flexion. It attached a notice of appellate rights, which informed Ms. Encarnacion that she need not do anything if she was satisfied with the outcome of her appeal and that her "local VA office [would] implement the Board's decision." R. at 214. The notice further advised that, if dissatisfied, Ms. Encarnacion could (1) appeal to this Court, (2) file a motion for reconsideration of the Board's decision, (3) file a motion to vacate the Board's decision, or (4) file a motion to revise the Board's decision based on clear and unmistakable error.

About a month later, the AOJ implemented the Board's decision as to the right knee rating. It notified Ms. Encarnacion of this on June 14, 2018. R. at 125-27. Just over a month after that, on July 18, she filed an NOD as to the AOJ's implementation, but only with regard to the rating issue. This prompted two somewhat inconsistent responses from the Agency. On September 20, it issued a Statement of the Case (SOC) on the merits of the right knee rating claim; on September 21, it sent Ms. Encarnacion a letter rejecting the appeal of the June 2018 AOJ action because that action simply implemented the Board's May 2018 decision. The September 21 letter also informed her that she had "120 days from the date this [Board] decision was mailed . . . to file a Notice of Appeal" with this Court. R. at 96.

Ms. Encarnacion responded to the September 20 SOC by filing a Substantive Appeal to the Board; she did not respond to VA's letter informing her that it could not accept her NOD. Thereafter, VA responded to Ms. Encarnacion's Substantive Appeal by certifying her case to the Board and issuing another Board decision on the merits of the right knee rating claim. She appealed that Board decision to the Court, and her appeal was terminated by the Court's grant of a joint

3

motion for partial remand. In the joint motion, Ms. Encarnacion and the Secretary agreed that "the Board erred by addressing the merits of the increased rating claim before determining whether the [AOJ] properly found that it could not accept [the] July 2018 NOD." R. at 24.

At this point, we cannot proceed without commenting on the questionable utility to Ms. Encarnacion of that joint motion to remand. Instead of challenging whether the Board's denial of the increased rating was proper, the appellant agreed with the Secretary to a remand for the Board to decide whether it had the authority to make any ruling in the first place. The only possible outcomes were either dismissal of the appeal for lack of jurisdiction or an affirmation of jurisdiction but with a substantial delay in the resolution of any appealed issue. How any of this tactical jockeying could benefit Ms. Encarnacion remains a mystery to us.

On remand, in its June 2020 decision on appeal, the Board reasoned that it lacked jurisdiction because an appellant "may not challenge the merits of a Board decision by expressing disagreement with" the AOJ's implementation. R. at 4. Although the AOJ had erroneously issued the September 2018 SOC with respect to the increased rating issue and subsequently allowed the appeal to be returned to the appellate docket, the Board concluded that "the law prohibits an NOD with respect to this type of implementation" and that the Board had "no jurisdiction to address an issue without a valid NOD." R. at 5. In its decision, however, the Board did not address whether the NOD should have been sympathetically construed as a motion for the Board to reconsider its May 2018 decision.

## II. ANALYSIS

Ms. Encarnacion argues that the Board erred in not accepting her NOD that sought to appeal the Agency's implementation of the Board's earlier decision. For his part, the Secretary defends the Board's decision to disclaim jurisdiction on the grounds that a pure implementation cannot be appealed.

"It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision." *Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc). To that end, "the Court exercises de novo review over Board determinations that are critical to its jurisdiction." *Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011). The Court must decide whether an implementing action of the sort at issue here can be appealed and thus whether the Board erred in finding it lacked jurisdiction. Two provisions, 38 U.S.C. §§ 511 and 7104(a), govern

4

the jurisdictional question. Section 511 sets out the bounds of the subject matter within the Secretary's jurisdiction; section 7104(a), in turn, establishes that the Board's jurisdiction is derivative of the Secretary's.

We begin with the Secretary's jurisdiction. Under section 511(a), "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." A "decision" is a "judicial or agency determination after consideration of the facts and the law." BLACK'S LAW DICTIONARY 511 (11th ed. 2019). Clearly, an action that does nothing more than implement a grant of benefits already determined by another agency department falls outside the definition of "decision" because it lacks the requisite assessment of legal or factual issues. Such action is ministerial rather than adjudicative in nature; it merely effectuates an earlier judgment and leaves no room during implementation for choice or discretion. *See Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1323–24 (Fed. Cir. 2002); *see also Love v. McDonough*, 35 Vet.App. 336, 346 (2022) (noting the parties' agreement that issuing payment at a post-discontinuance disability rate is not a "decision" under section 511(a) but a ministerial act simply giving effect to an earlier discontinuance decision).

Section 7104 provides that the Board's jurisdiction is wholly derivative of the Secretary's. Specifically, it establishes that "[a]ll questions in a matter . . . under section 511(a) of this title . . . shall be subject to *one review* on appeal to the Secretary," and "[f]inal decisions on such appeals shall be made by the Board." 38 U.S.C. § 7104(a) (emphasis added). Ultimately, the Board's decision is deemed the "final and conclusive" determination of the Secretary as to any discrete issue decided therein. 38 U.S.C. § 511(a).

Taken together, these statutory provisions show that the pure implementation of a Board adjudication cannot be regarded as a decision "affect[ing] the provision of benefits" under section 511(a) and so cannot be appealed to the Board, which has already rendered the Secretary's final determination on the matter.[2]

---

[2] We have used the word "pure" to describe an implementation in which the AOJ need not make any further determinations for an award of benefits to take effect. Of course, there are frequently instances where implementation *does* require the AOJ to make additional determinations. The most obvious example is when a Board decision simply grants service connection and, to implement that award, the AOJ must for the first time determine the proper disability rating and effective date. In those circumstances, the AOJ does issue a "decision" that is appealable. *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997). This opinion does not pertain to what might be called "mixed" implementation decisions, which ministerially implement a grant of service connection but adjudicate the "previously undecided," "down-stream" rating and effective date issues. *Id.*

5

There are important exceptions to the finality of a Board decision. First, a claimant can file a Notice of Appeal within 120 days of the Board's decision to seek review in this Court. 38 U.S.C. §§ 7252(a), 7266. Alternatively, under 38 U.S.C. § 7103(a), a claimant can at any time request that the Board reconsider its decision. Finally, a claimant can file a motion with the Board to revise its decision on grounds that it was the product of clear and unmistakable error. 38 U.S.C. § 7111. A critical qualification on the right to file motions to reconsider or revise is that the underlying Board decision being challenged has not been reviewed and affirmed in relevant part by this Court. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 693 (Fed. Cir. 2000) (observing that, when this Court affirms a Board decision as to a specific issue, this Court's decision replaces the Board decision and there is no longer any Board decision subject to revision or reconsideration).

There is, however, no avenue to avoid finality by appealing to the Board the AOJ's implementation of a decision already made by the Board. Such an appeal does not abrogate the finality of a Board decision. Here, the implementation of the May 2018 Board decision by the AOJ was accompanied by no new findings of fact or law that could affect the award of disability benefits. The Board had already granted service connection and resolved the proper rating and effective date. Even more importantly, the AOJ couldn't render new findings on factual or legal issues already determined by the Board because that would place the AOJ in the untenable position of reviewing the decision of a superior tribunal on those matters. *See Donovan v. Gober*, 10 Vet.App. 404, 409 (1997). In sum, the AOJ's purely ministerial implementation of the Board's judgment was not a "decision" of the Secretary and thus could not be appealed through the filing of an NOD.

The appellant nonetheless maintains that VA waived (or at least forfeited) any objection to this jurisdictional defect because VA continued to adjudicate the claim by issuing an SOC and transferring the appeal to the Board. But this misunderstands the nature of jurisdiction and waiver: Only the violation of mandatory claims-processing rules can be waived. But here, without a "decision" under section 511, there is simply nothing to review. A decision is required to confer jurisdiction, and there is no action the Agency can perform to cure a lack of jurisdiction. *Hall v. McDonough*, 34 Vet.App. 329, 332 (2021) (citing *Henderson ex. rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). There are two sides to the jurisdiction coin. When Congress sets jurisdictional boundaries, agencies, like courts, can neither retreat from the authority conferred on

6

them (for example, by reading claims-processing rules as imposing limits on jurisdiction), nor step over the line and assert their jurisdiction to adjudicate matters not properly before them.

As relevant here, the AOJ could not, through errant processing, turn an invalid attempt to appeal into a valid one or "confer jurisdiction upon the Board over a claim that the Board was never authorized to hear in the first place." *Braan v. McDonald*, 28 Vet.App. 232, 237 (2016). In sum, the Board was correct that it had no authority to review any implementing action such as the one in this case because the action did not constitute a decision of the Secretary.

Ms. Encarnacion is not without recourse, however, as it is possible to construe her purported NOD as a motion for the Board Chairman to reconsider the May 2018 decision. When a written expression of disagreement with a Board decision is filed with the AOJ during the 120-day period to submit a Notice of Appeal to this Court, "the filing abates finality of the Board decision for purposes of appealing to the Court." *Ratliff v. Shinseki*, 26 Vet.App. 356, 360 (2013). *Ratliff* requires that an AOJ "forward written expressions of disagreement to the Board Chairman, who is to 'determine[] the status of the document, that is, whether it is considered a motion for Board reconsideration or not, and notif[y] the claimant of its determination.'" *Gomez v. McDonald*, 28 Vet.App. 39, 44-45 (2015) (quoting *Ratliff*, 26 Vet.App. at 360) (alterations in original). When Ms. Encarnacion's written expression of disagreement was submitted to the AOJ in July 2018, the finality of the May 2018 Board decision was abated, at least for purposes of appealing to this Court, until the Board Chairman takes the appropriate steps under *Ratliff*. Because the Board should have assessed whether Ms. Encarnacion's July 2018 submission qualifies as a motion to reconsider the Board's decision, we will vacate the June 2020 decision and remand for it to do so.

The Secretary argues that this disposition is pointless because, as he advised the Court before oral argument, the Board already construed the July 2018 NOD as a request for reconsideration of the May 2018 Board decision. There is no need, he says, for the Court to order the Board to do something it has already done. But this misunderstands the situation: the Court's task on appeal was to determine whether the Board committed error in the June 2020 decision, and we determined that it did by failing to address the *Ratliff* issue. That was the appropriate time for the Board to consider the matter—*not* in October 2022, more than a year and a half after Ms. Encarnacion filed her Notice of Appeal here and more than two weeks after our order notified the parties that we were considering whether the July 2018 NOD should be construed as a motion for Board Chairman reconsideration.

The Board's unilateral action ignored our admonition in *Cerullo v. Derwinski*, 1 Vet.App. 195, 197 (1991), that "[o]nce an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues." Not only is the concept of "concurrent or dual plenary jurisdiction . . . impermissible," we explained, but "allowance of dual jurisdiction raises the possibility that a court of appeals will expend extensive judicial time on a case only to have agency reconsideration nullify its efforts." *Id.* In this case, we ordered the Board on October 21 not to take action on any issue pending before the Court unless it was first granted leave to do so per the procedures spelled out in *Cerullo*. The Secretary declined to seek such leave on the Board's behalf. Given *Cerullo* and this Court's order, it should have been clear that the Board's belated attempt to dispose of the *Ratliff* issue while the Court was actively considering the matter was of no legal consequence. Regardless of what the Board purported, it could not construe the July 2018 NOD as a request for reconsideration of the May 2018 Board decision until the Court addressed the issue, over which we had taken jurisdiction. The Court having determined that *Ratliff* applied in these circumstances and that the June 2020 decision must be vacated, the Board is *now* permitted to construe the NOD as a motion for Board Chairman reconsideration.

This disposition clarifies not only juridical matters but practical ones. Action taken by the Secretary on an issue that is pending before this Court risks confusion as to governing procedures and deadlines. For example, the timing of a decision by the Chairman as to whether to grant or deny reconsideration directly impacts the timeframe within which a VA claimant can appeal a Board decision to this Court. In *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991), we established that, unless a protective Notice of Appeal has been filed in this Court, VA must "advise the claimant of the new 120-day judicial appeal period that commences, as to the underlying substantive [Board] decision, on the date of the mailing of the [Board's] notice of denial of the motion for reconsideration." Claimants, especially those who lack the assistance of capable counsel, could easily lose track of what they must do to pursue their cases properly when a claim or issue is being adjudicated simultaneously by two different tribunals.

One final matter. Counsel for the appellant attempts to resurrect a seemingly resolved substitution issue. After briefing was complete and prior to oral argument, Ms. Encarnacion obtained new counsel who attempted to raise a new argument about whether she received proper notice regarding her eligibility to substitute into the veteran's claims that were pending when he died. However, the Court declines to address this argument for two related reasons. First, as noted

8

above, the Board found that Ms. Encarnacion's request to substitute was granted by the AOJ. This renders any potential notice argument moot. Second, this Court and the Federal Circuit "have repeatedly discouraged parties from raising arguments that were not presented in an initial brief." *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008). Despite reiterating this warning, we have sometimes—perhaps too many times—gone on to address late-raised arguments anyway. Given the nature and timing of this argument, we will not do so here. The substitution issue is not of jurisdictional import and is therefore deemed waived. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999).

### III. CONCLUSION

The Secretary's motion for reconsideration is granted. The Court withdraws its January 30, 2023, decision and issues this decision in its place.

For the reasons discussed above, the Court VACATES the June 15, 2020, Board decision and REMANDS the matter for the Board to consider Ms. Encarnacion's July 2018 NOD in accordance with *Ratliff*, since we deem any Board action taken on that issue while it was pending before the Court to be void. The Court's October 21, 2022, order prohibiting the Board from taking action related to this case while it has been under consideration here is revoked.

JAQUITH, *Judge*, concurring: I concur with all of the Court's opinion except the penultimate paragraph. In my view, the substitution issue is neither moot nor waived—VA's mishandling of it is an important aspect of the tortured history of this case and the spotty record before the Court impedes review of the effect of that mishandling. For example, it is unclear whether Ms. Encarnacion was notified of her right, as a substituted claimant, to a hearing at which VA would "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c) (2011). The Court's remand affords the Board an opportunity to ensure that Ms. Encarnacion's substitution rights were or are protected.

The substitution snafu is, however, only a part of the significant breakdown in this case of the system for agency adjudication of veterans' benefits claims and independent judicial review of that adjudication. VA has flouted the authority of the Board and this Court, and our dissenting colleague says we are powerless to address the Agency's defiance. In my view, a contrary

9

conclusion is dictated by our status and function as a court created to provide independent judicial review of decisions in a system founded on fair process.

## A. Substitution

Under 38 U.S.C. § 5121(a), monetary benefits to which a veteran was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death—referred to as "accrued benefits"—are payable to the veteran's spouse. If a veteran dies while a claim for benefits is pending, a person who would be eligible to receive accrued benefits under section 5121(a) may "file a request to be substituted as the claimant for the purposes of processing the claim to completion." 38 U.S.C. § 5121A(a)(1). Even if a surviving spouse submits no specific request to substitute, the spouse's claim for accrued benefits, survivors pension, or dependency and indemnity compensation (DIC) is deemed to include a request to substitute if such a claim was pending before the agency of original jurisdiction or the Board when the claimant died. 38 C.F.R. § 3.1010(c)(2) (2014). Before VA promulgated § 3.1010, it deemed a surviving spouse's claim for accrued benefits as also requesting substitution. *See Reeves v. Shinseki*, 682 F.3d 988, 993 (Fed. Cir. 2012) ("'To request substitution, an eligible survivor may file either a claim for accrued benefits or a request for substitution. Accrued benefits claims and requests for substitution shall be treated as one and the same.'") (quoting VA Fast Letter 10–30 (Aug. 2010)); *Reliford v. McDonald*, 27 Vet.App. 297, 303 (2015) (noting that Fast Letter 10-30 stated that "'receipt of a VA Form 21–534 will be accepted as both a claim for accrued benefits and a substitution request'").

The regulation specifically provides that "the agency of original jurisdiction [AOJ] will decide in the first instance all requests to substitute, including any request to substitute in an appeal pending before the Board." 38 C.F.R. § 3.1010(e) (2014); *see* 38 C.F.R. § 20.1302 (2014). The Secretary's determination that the AOJ, rather than the Board, must decide substitution in the first instance "enable[s] a dissatisfied prospective substitute to obtain Board review of the substitution issue on appeal." *Nat'l Org. of Veterans Advocs., Inc. v. Sec'y of Veterans Affs.*, 809 F.3d 1359, 1364 (Fed. Cir. 2016).

Ms. Encarnacion's spouse, Army veteran Idilio Aparicio, tore the anterior cruciate ligament and medial meniscus of his left knee while on active duty in 1970. R. at 2678, 3142. In October 2009, the veteran sought service connection or increased ratings for disabilities of his knees and back and radiculopathy and neuropathy of his arms and legs; he characterized the conditions as

"all related" and asked for a compensation and pension (C&P) examination. R. at 2752. In March 2010, a C&P physician opined that the veteran's right knee condition was related to his service-connected left knee condition, reasoning that a "long standing painful degenerative condition [of one knee] commonly causes overloading of the other knee." R. at 2680. In August 2010, the San Juan, Puerto Rico, regional office (RO) granted service connection for lumbar strain and degenerative joint disease, rated at 40%; for right knee degenerative joint disease, rated at 10%; and for left knee radiculopathy, rated at 0%—all effective in October 2009—but denied several other claims. R. at 2595-96. The veteran submitted a statement in September 2010 disagreeing with the ratings, effective dates, and denials of service connection. R. at 2576. A March 2011 SOC reaffirmed the RO decisions. R. at 2539-50. Four days after the SOC, the veteran filed a VA Form 9 appealing all issues. R. at 2489. Although the block indicating that he did not want a Board hearing was checked, the veteran specified: "Please continue my appeal procedure and schedule a hearing as soon as possible." R. at 2489.

The veteran died in Puerto Rico on October 25, 2011. R. at 2363-64, 2408-09. The causes of death were listed as a myocardial infarction, arterial hypertension, and a cerebral tumor. R. at 2363. The appellant submitted a statement on November 2, 2011, advising VA of the veteran's death and asking that VA "evaluate for DIC benefits and continue his appeal for accrued benefits." R. at 2427. Later in November 2011, the appellant submitted a VA Form 21-534, Application for Dependency and Indemnity Compensation, Death Pension and Accrued Benefits, indicating that she and the veteran had married in July 1983, had two children, and remained married and lived together continuously until the veteran's death, and that she had paid $3,000 in burial expenses. R. at 2365-72.

VA denied the appellant's DIC claim. R. at 2236. In June 2014, less than two weeks after she received notice of the denial, the appellant submitted a statement disagreeing with it, emphasizing that the veteran's service-connected conditions "contributed substantially to his cause of death" and that she was claiming accrued benefits and a total disability rating for her deceased spouse based upon individual unemployability. R. at 2236. The Philadelphia RO replied that it could not accept the appellant's statement as a NOD regarding denial of DIC because she already had an appeal pending for that issue at the San Juan RO. R. at 2225. The appellant forwarded the reply by the Philadelphia RO to the San Juan RO in September 2014 and asked for the SOC or review of the case and a new decision. R. at 2219.

11

Notwithstanding Fast Letter 10-30 and then § 3.1010(c)(2), there is no evidence that either RO addressed the substitution issue at all. And that failure had consequences. A surviving spouse who submits no specific request to substitute but rather a claim for accrued benefits, a survivors pension, or DIC—which is deemed to include a request to substitute—"may waive the right to substitute in writing." 38 C.F.R. § 3.1010(c)(2) (2014). In violation of VA's established procedure, Ms. Encarnacion was not notified of her right to substitute or of her right to waive the opportunity to substitute. *See Reliford*, 27 Vet.App. at 303-04.

Pursuant to section 5121, a surviving spouse's claim for accrued benefits is separate and distinct from the deceased veteran's underlying claim. *Id.* at 301. An accrued-benefits claim "is relegated to the beginning of the process, generally behind other pending claims, regardless of where the underlying claim had been in the appeals process." *Id.* And "whether accrued benefits should be awarded 'must be determined based on evidence that was either physically or constructively in the [deceased claimant's] file at the time of his [or her] death.'" *Id.* at 301-02 (first alteration in original) (quoting *Ralston v. West*, 13 Vet.App. 108, 113 (1999)).

In contrast, section 5121A enables the surviving spouse to proceed in the place of the deceased veteran to the completion of the claim (for purposes of accrued benefits) and the substituted spouse is "afforded the ability to further develop the record, including via the Secretary's duty to assist." *Id.* at 302.

Even though section 5121A thus appears to be more favorable for claimants, the choice is theirs. *Id.* at 304. Failing to notify Ms. Encarnacion that she could waive substitution constitutes error. *See id.* Moreover, because the AOJ did not address substitution at all, it did not provide "notice in accordance with § 3.103(b)(1)"—including the substitute's right to a hearing—as § 3.1010(e)(1) required.

The Board recognized that the AOJ was responsible for adjudicating substitution and twice tried to get the AOJ to do so. In May 2016, the Board dismissed the veteran's appeal because he had died before the Board issued a decision. R. at 1844. The Board noted—in bold letters—that the appellant had submitted a statement and an NOD "that could be construed as a request to be substituted as the appellant in this case," and that the issue of whether she might be substituted "has not been specifically adjudicated by the AOJ," so the Board declared that the issue of whether Ms. Encarnacion may be substituted "is referred to the AOJ for appropriate action." R. at 1844. The Board simultaneously remanded Ms. Encarnacion's appeal for the RO to issue an SOC "as to

the issue of entitlement to accrued benefits" and to obtain treatment records, Social Security records, the veteran's official military personnel file, and a medical opinion regarding whether the veteran's service-connected disabilities "contributed significantly or materially to cause his death," and whether the causes of his death began in service or the year immediately following service or were related to service. R. at 1835-39.

In September 2017, the Board found that the medical opinions regarding the cause of the veteran's death were inadequate, that the appellant could "continue the claim on appeal" on behalf of the veteran, that the appellant's DIC claim "encompasse[d] a claim to substitute," and that there was confusion over the May 2016 Board decisions "given the apparent absence of any notice sent to the appellant as to how she may pursue" her claims for accrued benefits. R. at 285-87. The Board remanded the case for the RO (1) to provide the appellant "with the appropriate notice, informing her as to what evidence she may submit to substantiate the claims on appeal" and provide her "an adequate amount of time to submit any additional evidence," and (2) to refer the appellant's claims file to another VA physician "to review and provide opinions as to the cause of the Veteran's death." R. at 287.

In May 2018, the Board observed, for a third time, that the AOJ had not determined whether the appellant was a valid substitute. R. at 182. The Board decided to overlook the regulatory requirement without even acknowledging it, saying only this: "Although it does not appear that a formal determination was made, by the AOJ's actions it is clear they approved her request to substitute and afforded her the appropriate notice rights. *See* December 2017 letter." *Id.* But the Board's decision to abandon its insistence on regulatory compliance did not dispel the confusion it had found 8 months earlier. First, the Board began the paragraph giving up on its prior determinations by mistakenly describing its prior remands as occurring in May 2015 and September 2016. R. at 181-82. Those remands occurred in May 2016 and September 2017—unless there were two additional remands not included in the record that were similar to the two that were included. *See* R. at 283-89 (September 2017), 1830-40 (May 2016). Second, the contents of the December 2017 letter the Board cited were not spelled out and the parties did not include it in the record before the Court.

The appellant contended that the December 2017 Agency letter still did not include any substitution determination—as the Board acknowledged, R. at 182—and that the absence of that determination deprives the Board of jurisdiction. Though the Board concluded otherwise in May

2018, asserting that it had jurisdiction, *id.*, in September 2017 the Board had said, "Jurisdiction of this matter currently resides with the San Juan, Puerto Rico RO." R. at 285. And in May 2016, the Board dismissed the veteran's appeal for lack of jurisdiction, citing § 20.1302. R. at 1845. Section 20.1302 provides both for dismissal of a veteran's appeal pending before the Board when the veteran dies and for the substitution determination by the AOJ. Moreover, as the appellant has highlighted, VA declared in its notice of its proposal to add § 3.1010 and amend § 20.1302 that "the Board lacks original jurisdiction to decide a request to substitute in the first instance." *Substitution in Case of Death of Claimant*, 76 Fed. Reg. 8666-01, 8667 (Feb. 15, 2011). On the other hand, the appellant's counsel seemed to concede at oral argument that the substitution rules are not truly jurisdictional, but argued that the AOJ's failure to address substitution means the issue is still pending. Oral Argument (OA) 3:24-43, 11:06-35, 16:27-18:25, *Encarnacion v. McDonough*, U.S. Vet. App. No. 21-1411 (held Oct. 27, 2022), https://www.youtube.com/watch?v=F3kCvKwo9nQ.

It is not clear to me whether the statement that "[t]he substitution issue is not of jurisdictional import," *ante* at 9, means that the Court has concluded that VA was wrong in saying otherwise because the substitution rules are claims processing ones, or just that the Board's finding that Ms. Encarnacion's (deemed) request to substitute was implicitly granted by the AOJ resolves any jurisdictional question. Either way, I would not find the substitution argument waived by the appellant under the circumstances here, where the counsel change apparently was a consequence of oral argument being scheduled to be heard at Syracuse University College of Law, appellant's new counsel raised the substitution issue 3 weeks after entering her appearance, and we expressly included the issue in those for discussion at oral argument. However, the irregular initiation of the argument, in both timing and form—in a "*Solze* notice," *see Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013), rather than regular briefing—did impede its development. *See Page v. McDonough*, 35 Vet.App. 94, 97 n.3 (2022). And the muddled record leaves open to debate whether the error in addressing substitution was harmless or prejudicial to the appellant. *See Tadlock v. McDonough*, 5 F.4th 1327, 1337-38 (Fed. Cir. 2021).

At oral argument, appellant's counsel asked how Ms. Encarnacion, who is elderly, primarily speaks Spanish, and was unrepresented below, was supposed to understand what her rights were, in light of the mixed messages she received from VA (regarding rating decisions being made on a record that closed at the time of her husband's death and whether she could submit new

14

evidence), the lack of notice, the nuances of sections 5121 and 5121A, the length of time it took to process her claim, and the impact of hurricanes in Puerto Rico on her financial situation. OA 5:22-43, 10:41-11:00, 17:09-55, 47:23-49:49. And appellant's counsel argued that the December 2017 letter did not include notice of the appellant's right to a hearing and afforded only 30 days to submit evidence. OA 5:34-43, 47:55-48:08. The record before the Court does not include that letter—or a reasonable answer to the question of how Ms. Encarnacion was supposed to understand what her rights were. The appellant did, in October 2018, indicate that she did not want a Board hearing. R. at 70. But that does not address the preceding 7-year broken road from the date of the appellant's claim and (deemed) substitution request.

The Court's remand for the Board to determine whether the appellant's July 2018 NOD should be construed as a motion for reconsideration of the May 2018 Board ruling affords the Board another opportunity to clean this up. The Board should ensure that the appellant's substitution rights are protected and she is afforded a meaningful opportunity to develop the record, including through the Secretary's duty to assist, a hearing, and time to submit evidence, all so the error in failing to do so beginning in November 2011 is not prejudicial.

## B. The Court's Jurisdiction

As Judge Toth's thorough opinion on behalf of the Court explains, our jurisdiction comes from the appeal of the June 2020 Board decision. See 38 U.S.C. § 7252(a). In that decision, the Board dismissed Ms. Encarnacion's appeal of VA's evaluation of the veteran's right knee disability because her NOD was aimed at the June 2018 RO rating decision that merely implemented the May 2018 Board decision. R. at 110, 112-18, 176. Obviously, then, the propriety of VA's treatment of the appellant's July 2018 NOD is the focus of this appeal.

### 1. Procedural Recap

The appellant initially argued that the Board provided an inadequate statement of reasons and bases for its decision to dismiss her claim in that the Board failed to discuss the instructions the RO provided to the appellant inviting her to appeal the June 2018 rating decision, R. at 99-100, and the actions of the RO after she submitted her NOD—issuing an SOC, R. at 72-94, marking her NOD and later appeal (on VA Form 9) as timely, R. at 63-64, and certifying her appeal to the Board, R. at 65-67. Appellant's Br. at 6. The appellant also argued that the Board failed to discuss whether the RO's actions afforded her due process. *Id.* at 1, 7. The Secretary countered that the appellant was provided clear instructions on how to appeal the May 2018 Board decision, R. at

15

214-15, the RO's September 2018 letter explained that the RO could not accept the appellant's NOD, R. at 95-97, and the Board adequately explained why the June 2018 RO decision could not be challenged, "despite the errant SOC," R. at 6-7. Secretary's Br. at 8-9.

Then the appellant's new counsel argued that, because the RO never decided the substitution question, the Board never had jurisdiction to adjudicate the appellant's claims and thus there is no final Board decision for the Court to review. Appellant's Oct. 3, 2022, *Solze* Notice at 5-6. With oral argument 3 weeks away, the Court ordered the parties to be prepared to discuss "the propriety and significance of the Board's findings with regard to substitution" and whether the Board's findings "marked a concession by the Secretary." Oct. 6, 2022, Order. Seven days later, the Secretary advised the Court that the Board had issued a letter, that very day, informing the appellant that it had construed her July 2018 NOD as a request for reconsideration of the May 2018 Board decision. Secretary's Oct. 13, 2022, *Solze* Notice at 1-2. The Court ordered that the Board "take no action related to any claim or issue currently pending before this Court relating to this case" without "mov[ing] to do so in accordance with the procedures spelled out in *Cerullo*," Oct. 21, 2022, Order (citing *Cerullo v. Derwinski*, 1 Vet.App. 195, 197, 200-01 (1991)). No such motion was made.

### 2.   *The Role of the Court*

Our dissenting friend says we should not sally forth looking for wrongs to right. *Post* at 27. I am more concerned that we not shirk our responsibility "to provide our nation's veterans and their families with independent judicial review of Board decisions," *Am. Legion v. Nicholson*, 21 Vet.App. 1, 3 (2007), and, in fulfilling that responsibility, do the right thing in the right way for the right reason.

The first notes of the dissent's bugling retreat are that Ms. Encarnacion did not argue that her July 2018 NOD should have been treated as a motion for reconsideration. It is true that she did not make that argument specifically; her arguments went well beyond that. Ms. Encarnacion argued that remand is required because the Board provided an inadequate statement of reasons or bases for finding her July 2018 NOD void and dismissing her appeal, and the Board failed to discuss how the RO's actions—in encouraging, accepting, handling, and certifying her appeal— were "compliant with due process." Appellant's Br. at  6-8. The appellant also faulted the Board for nonetheless accepting and reviewing the appeal, and for failing to ensure that the RO complied with the Board's prior remand order "to determine 'whether the RO properly found that it could

16

not accept Appellant's July 2018 NOD.'" *Id.* At oral argument, appellant's new counsel focused on VA's failure to issue a substitution decision, but she also argued that VA's handling of the appellant's July 2018 NOD was unfair to the appellant and the Board "couldn't just dismiss for lack of jurisdiction" because "the facts of this case are so lopsided against . . . a widow." OA 50:30-54:03. Viewed in the context of the appellant's actual arguments for remanding the Board's decision, it takes no sallying for the Court to consider whether the July 2018 NOD should have been treated as a motion for reconsideration.

Moreover, though "the refusal to consider arguments not raised is a sound prudential practice . . . there are times when prudence dictates the contrary." *Davis v. United States*, 512 U.S. 452, 464 (1994). And it is beyond dispute that "the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see Mason v. Shinseki*, 25 Vet.App. 83, 94 (2011). The dissent rests on a case that acknowledges that "a court is not hidebound by the precise arguments of counsel" but cannot radically transform a case by taking it over, ordering non-parties to address issues the parties had not raised, and then decide the case based on one of those issues—circumstances that bear absolutely no relationship to what is happening in this case. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020). Here, "[u]nlike the Ninth Circuit in *Sineneng-Smith*, the Court did not sideline the parties in favor of soliciting arguments from strangers to the litigation. Rather, the Court asked the parties—and only the parties—to address the issues that it felt needed addressing." *United States v. Powell*, 467 F. Supp. 3d 360, 384 n.13 (E.D. Va. 2020). We need not and should not don the dissenter's judicial blinders and fail to identify and fairly apply governing law. *See Wolfe v. Wilkie*, 33 Vet.App. 25, 41 (2020) (Falvey, J., concurring) ("[W]e must resolve the legal issues before us according to the law. . . . even if the parties don't cite that law.").

### 3. Motions for Reconsideration

The dissent's second contention is that the Court has no jurisdiction to say that the Board erred in not addressing whether the July 2018 NOD constituted a motion for reconsideration because only the Chairman can order reconsideration, the Chairman is not the Board, and thus reconsideration is outside the statutory appellate structure. *Post* at 27-28. But the limits of that argument stop it well short of the circumstances in this case.

As the dissent acknowledges, the Court may review the Chairman's denial of reconsideration when the Court has jurisdiction over the underlying Board decision. *Wolfe*, 33 Vet.App. at 31, 39; *see Manning v. Principi*, 16 Vet.App. 534, 539 (2002) ("[T]he Court has jurisdiction to review denials of reconsideration if the Court has jurisdiction over the underlying [Board] decision."), *aff'd*, 85 F. App'x 216 (Fed. Cir. 2004), and *Engelke v. Gober*, 10 Vet.App. 396, 399 (1997) (same). That was the situation in *Wolfe*, *Manning*, and *Engelke*, but the case they and the dissenter rely upon—*Mayer v. Brown*, 37 F.3d 618, 620 (Fed. Cir. 1994)—is not quite so limited. *Mayer* concerns an appeal from the Chairman's denial of a motion for reconsideration made more than 17 months after a Board decision that was not appealed. *Mayer*, 37 F.3d at 619. *Mayer* simply held that 38 U.S.C. § 7261, the statute that describes the scope of the Court's review,[3] "may allow the [Court] to review actions of the Chairman in cases where it already has jurisdiction by virtue of a timely appeal from a final board decision, [but] it does not independently grant jurisdiction over such actions." *Mayer*, 37 F.3d at 620; *see Palomer v. McDonald*, 27 Vet.App. 245, 255–56 (2015) ("[When] the Court declines to exercise its jurisdiction over an [untimely] appeal from a Board decision, the Court does not have independent jurisdiction over an appeal from a denial for reconsideration by the Board Chairman."), *aff'd*, 646 F. App'x 936 (Fed. Cir. 2016). *Mayer* therefore actually *supports* jurisdiction to review the failure of the Chairman to address the claimant's written expression of disagreement *in the context of the June 2020 Board decision* finding her NOD to be void and ineffective. *See Mayer*, 37 F.3d at 620. *Wolfe* also supports jurisdiction in this case because Ms. Encarnacion submitted a written expression of disagreement with a Board decision within 120 days, so here, as in *Wolfe*, the Court has jurisdiction at least to require the Board to determine whether the appellant satisfied the grounds for abating the finality of the prior Board decision under *Rosler*, contrary to the Board's determination in June 2020 that the appellant's written expression of disagreement was a nullity. *See Wolfe*, 33 Vet.App. at 29-32; *Rosler v. Derwinski*, 1 Vet.App. 249 (1990).

### 4. The *Ratliff* Rule

Our dissenting friend's views of the process for adjudicating motions for reconsideration are a tick off the issue before the Court today, which calls for the application of the express holding in *Ratliff*:

---

[3] In exercising its exclusive jurisdiction to review Board decisions, the Court is empowered to set aside decisions by the Chairman of the Board that do not accord with law. 38 U.S.C. §§ 7252(a), 7261(a)(3).

[W]hen a written expression of disagreement with a Board decision is filed at the RO during the 120–day period to file an NOA, the filing abates finality of the Board decision for purposes of appealing to the Court until one of the following actions is taken: (1) The Secretary determines the written disagreement is an NOA and returns it to the claimant with information concerning the proper location to file an appeal or forwards it to the Court and so notifies the claimant; (2) the Board Chairman determines the status of the document, that is, whether it is a motion for Board reconsideration, and notifies the claimant of his determination; or (3) the claimant files an NOA with the Court and, assuming the Court becomes aware that before the NOA was filed a written disagreement was filed with the RO within the Court's appeal period, the Court determines that the written disagreement was a misfiled NOA and not a motion for Board reconsideration. . . . [I]f the Secretary returns the written disagreement to the claimant or the Board determines that the written disagreement does not constitute a motion for Board reconsideration, the Secretary must notify the claimant that the Board decision, as of the date of notification to the claimant, is now deemed final and that the claimant has a new 120–day appeal period beginning with the date of the mailing of the notification.

*Ratliff v. Shinseki*, 26 Vet.App. 356, 360–61 (2013). The *Ratliff* issue was squarely before the Board in June 2020 when it decided the significance and effect of the appellant's July 2018 NOD. And there can be no doubt that deciding the significance and effect of the appellant's NOD is what the Board did; the Board said it got the case upon the remand of a prior Board decision because the prior Board decision "erred in failing to determine whether the RO properly found that it could not accept the July 2018 NOD" and proceeded to conclude that "the July 2018 NOD is void." R. at 4-5. But the Board in June 2020 did not consider *Ratliff*, even though the appellant submitted "a written expression of disagreement with [the May 2018] Board decision . . . during the 120–day period to file an NOA." *Ratliff*, 26 Vet.App. at 306, R. at 107-11. The infirmity of the Board's failure to apply *Ratliff* in this case does not depend on whether the Board has a role in the reconsideration process. The Board in June 2020 was obliged to determine (1) whether the claimant filed a timely written expression of disagreement with the prior Board decision; (2) if so, whether that expression of disagreement was addressed and the claimant notified of the outcome; and (3) the effect of the expression of disagreement and the follow-up on the finality of the prior decision and the appeal period. The Board plainly failed to fulfill that obligation.

Moreover, to the extent the reconsideration process is significant in this case, that process is not as solitary as the dissent posits. The Chairman is a member of the Board, 38 U.S.C. §§ 7101(a), 7101A, and reconsideration decisions affect the provision of benefits to veterans and their survivors. *See* 38 U.S.C. § 511(a). Beyond that, notwithstanding 38 U.S.C. §§ 7103(a) and (b), a

19

reconsideration order need not emanate from the Chairman; under 38 C.F.R.§ 20.109(b) (2022), reconsideration authority "may also be exercised by the Vice Chairman of the Board and by Deputy Vice Chairmen of the Board"—who are also members of the Board and each "may also be known as a Veterans Law Judge." 38 C.F.R. § 20.101 (2022). In addition, under 38 U.S.C. § 7103(c), "[t]he Board on its own motion may correct an obvious error in the record." And 38 C.F.R. § 20.904 empowers an individual Board member to decide whether remand or referral to correct a procedural defect or take any other action is essential for a proper appellate decision, or the matter may be addressed by the Board.

When the appellant submitted her July 2018 NOD, requests for reconsideration were to be addressed to the Board's Director, Office of Management, Planning and Analysis. 38 C.F.R. § 20.1001(b) (2018). VA's manual for handling appeals and reviews provides that "[t]he Board determines the adequacy of MFR,[4]" "[o]nly the Board can act on an MFR," "the Board will determine whether [documents] are true MFRs or misfiled NOAs," and "[t]he Board decides whether the communication from a claimant is an acceptable MFR." VA APPEALS AND REVIEWS MANUAL (M21-5), ch. 7, secs. G.2.c., d., and e. VA recognizes that documents disagreeing with a Board decision often are not sent to the Board. M21-5, ch. 7, sec. G.2.f. The appellant's NOD was stamped as received by VA's Evidence Intake Center. R. at 107. In such circumstances, M21-5 provides that a claims processor reviews the documents and presents them (in person or electronically) to the local Appeals Coach or designee. M21-5, ch. 7, sec. G.2.f. The Appeals Coach reviews VA's database "to determine the action needed." *Id.* "If the Board has rendered a final decision on any appeal," the claims processor prepares a "*Disagreement with BVA Decision* letter" and sends it to the appellant. *Id.* "If the Board has never rendered a decision on any appeal, but there is an appeal pending," the claims processor forwards the appellant's documents to the Board or the RO appeals personnel, depending on where the appeal is. *Id.*

The applicable M21-5 provisions make clear that the process of identifying and handling documents that disagree with Board decisions involves gatekeeping determinations by VA employees other than the Chairman—at the Board and otherwise. For example, a claims processor or Appeals Coach must ensure that a document expressing disagreement with a Board decision gets to the Board and someone at the Board must determine whether the document is a motion for reconsideration under 38 C.F.R. § 20.1002 or a motion to vacate under 38 C.F.R. § 20.1000. Only

---

[4] "MFR" is an initialism for motion for reconsideration.

§ 20.1002(c) provides for review and action by the Chairman; § 20.1000 does not. *See Wolfe*, 33 Vet.App. at 42 (Bartley, C.J., dissenting in part) (collecting cases where the Chairman referred motions for reconsideration to a Board member for consideration as a motion to vacate). In this case, the breakdown in communications appears to have begun when the RO both invited Ms. Encarnacion to appeal the June 2018 rating decision, R. at 99-100, and said the RO could not accept appellant's NOD, R. at 95-97. Then the RO demonstrated that it considered the right knee rating decision to be on appeal, issuing an SOC regarding its denial of an increased evaluation for the veteran's right knee disability, R. at 72-94, marking her NOD and later appeal as timely, R. at 63-64, and certifying her appeal to the Board, R. at 65-67. The Board in May 2019 identified no issue with Ms. Encarnacion's July 2018 NOD but denied her appeal. R. at 34-35. It was only at this Court that the parties agreed that remand was warranted because "the Board erred by addressing the merits of the increased rating claim before determining whether the RO properly found that it could not accept Appellant's July 2018 NOD." R. at 24. Back at the Board in June 2020, a second veterans law judge declared the NOD void—in the sentence right after noting that "a final determination by the Board may only be reconsidered by the Board upon motion." R. at 5.

Apparently no claims processor, appeals coach, RO adjudicator, or Board member considered whether the appellant's July 2018 NOD was a written expression of disagreement that might constitute a motion for reconsideration, much less sent it to the Chairman for consideration and action. Even when the Board purported to act on the appellant's July 2018 NOD in October 2022, the letter advising her that the Board had construed her NOD as a request for reconsideration of the May 2018 Board decision came from the Board's Office of Litigation & Customer Support, did not mention the Chairman, and said nothing of who had decided to construe the appellant's NOD as a request for reconsideration over two years after the Board had determined that her NOD was void. Secretary's Oct. 13, 2022 *Solze* notice.

In *Mayer*, *Wolfe*, and *Manning*, the Board denied claimants' motions for reconsideration and they appealed. In *Ratliff*, the Court addressed the situation here—where a claimant submits a written expression of disagreement with a Board decision within 120 days but the Board does not consider or address it as motion for reconsideration. *Ratliff*, 26 Vet.App. at 359-61. The surviving spouse in *Ratliff* filed her appeal to the Court 39 months after the Board decision but the Court found it timely because the finality of that decision had been abated by her August 2008 written expression of disagreement to the RO, which said, "I want to appeal." *Id.* at 357-61.

21

In this case, the appellant's July 2018 NOD sought to continue her appeal of the Board's May 2018 decision that did not increase the veteran's right knee rating. R. at 108. The Board in June 2020 concluded that it had no jurisdiction to address the appellant's disagreement with the May 2018 Board decision because her July 2018 NOD was void. This Court's jurisdiction always "includes the power to review a determination by the Board that it lacks jurisdiction over a particular claim." *King v. Nicholson*, 19 Vet.App. 406, 409 (2006); *see Mintz v. Brown*, 6 Vet.App. 277, 281 (1994) ("[T]he Secretary's refusal to exercise jurisdiction . . . clearly presents a case or controversy within the purview of the Court's jurisdiction."). That is what the Court is doing here— exercising its well-established jurisdiction to apply the principles set forth in *Ratliff*. *See Threatt v. McDonald*, 28 Vet.App. 56, 60-61 (2016). The Board in July 2020 acknowledged its power to reconsider the May 2018 Board decision upon motion but failed to recognize or fulfill its obligation to determine whether the appellant's July 2018 written disagreement amounted to such a motion. That obligation did not depend on the appellant calling her NOD a motion or filing it with the Board. *See Ratliff*, 26 Vet.App. at 359-61; *Kouvaris v. Shinseki*, 22 Vet.App. 377, 381 (2009) ("In light of the veteran-friendly nature of the veterans benefits system, . . . strict compliance as to where within the Board, or even within VA, [a] motion for reconsideration must be filed is not required.").[5] Nor does the Court's jurisdiction to address the Board's failure in June 2020 to determine whether the appellant's NOD constituted a motion for reconsideration that abated the finality of the May 2018 Board decision depend on the Court currently having jurisdiction over the May 2018 Board decision. *See Kouvaris*, 22 Vet.App. at 381 (holding that the claimant's NOD was a motion for reconsideration that abated the finality of the Board decision and dismissing the appeal for lack of jurisdiction with the assurance that the claimant would "have 120 days from the issuance of any unfavorable decision of the Board Chairman on the motion for reconsideration to file an appeal in this Court").

This appeal is no freestanding claim of error by the Chairman. There is nothing in the record to suggest that the Chairman ever saw the appellant's NOD, much less considered it a

---

[5] *Kouvaris* illustrates that the Court is empowered to decide whether an appellant's filing constitutes a motion for reconsideration that abates the finality of the underlying Board decision and thus dismiss the appeal for lack of jurisdiction. *Id.* Dismissal of this appeal is not appropriate because it did not come to the Court on a Notice of Appeal from the May 2018 Board decision but on a Notice of Appeal from the June 2020 decision. So vacating the July 2020 Board decision and remanding the matter for the Board to consider Ms. Encarnacion's July 2018 NOD in accordance with *Ratliff* is the right result here. As in *Kouvaris*, any consideration by the Court of the underlying May 2018 Board decision, whether reconsideration is granted or denied, is downstream.

motion for reconsideration and denied it. The actions and inaction on the appellant's NOD were by the RO in June 2018, VA's intake center, and the Board in June 2020, and the latter is accountable for failing to even consider or address whether that written expression of disagreement constituted a motion for reconsideration, and for the effect of that failure on the finality of the May 2018 Board decision.

### 5. VA's Disregard of Cerullo and the Court

The Board's unilateral action in construing the appellant's July 2018 NOD as a request for reconsideration in October 2022 was squarely prohibited by *Cerullo v. Derwinski*, 1 Vet.App. 195 (1991), and is void. And VA's heedlessness of that defining case grew to disregard of the authority and jurisdiction of this Court.

Ms. Encarnacion's Notice of Appeal of the June 2020 Board decision to this Court was dated and docketed in February 2021. In September 2022, this case was scheduled for oral argument the next month. On September 27, 2022, the parties made a joint motion for clarification of the issues to be addressed at oral argument. Two days later, the Court granted the parties' motion and ordered that the issues that the parties should be prepared to discuss included the following: "if a claimant files an NOD as to the RO's implementation within 120 days of the Board's decision, does VA have a duty to sympathetically construe that NOD as a motion for reconsideration?" Court Order, Sep. 29, 2022. Two weeks after the Court's order—and 2 weeks before oral argument—the Secretary notified the Court that the Board had issued a letter that very day informing the appellant that it had construed her July 2018 NOD as a request for reconsideration. Secretary's *Solze* Notice, Oct. 13, 2022. The Secretary's notice specifically cited the Court's question regarding whether VA has a duty to sympathetically construe that NOD as a motion for reconsideration.

Since the Court's infancy, it has embraced and applied the principle of federal appellate law that "the filing of an NOA confers plenary jurisdiction[6] upon an appellate court." *Cerullo,* 1 Vet.App. at 196. The Court did so by specific reference to the Supreme Court's holding that "'[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Id.* (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58

---

[6] Plenary jurisdiction is "[a] court's full and absolute power over the subject matter and the parties in a case." *Jurisdiction*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Plenary" means "[f]ull; complete; entire." *Plenary*, BLACK'S LAW DICTIONARY (11th ed. 2019).

(1982)). Timely filing of a Notice of Appeal transfers jurisdiction to the appellate court. *Cerullo*, 1 Vet.App. at 197. Simply put, "[o]nce an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues." *Id.*

The dissent's assertion that *Cerullo*'s prohibition of agency action on the issues on appeal is "too broad and legally incorrect," as well as unworkable in the system for adjudicating claims for veterans benefits, *post* at 30, is belied by over three decades of the Court reaffirming and successfully applying *Cerullo*. *See, e.g.*, *Monk v. Wilkie*, 32 Vet.App. 87, 95 n.3 (2019) (en banc) (relying on the *Cerullo* principle "that once this Court exercises jurisdiction over a matter, the Board may not consider the same issue" to stay in the mainstream of Federal appellate court practice), *aff'd in part, dismissed in part on other grounds sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021); *Westfall v. McDonald*, 27 Vet.App. 341, 347 (2015) ("[I]f the Board acted on the remand before the case at the Court was final, then any action that the Board took would have questionable validity" because *Cerullo* holds that once the Court has jurisdiction "the Board is without jurisdiction to take action on the same issues."). The dissent's attack on *Cerullo* relies on examples far afield from this case, but when there has been tension between the rules for fair and functional independent judicial review and the unique aspects of the system for affording veterans and their survivors opportunities to secure benefits, it is the separation of issues that has made the process work. *See Monk,* 32 Vet.App. at 95-97; *Young v. Shinseki*, 25 Vet.App. 201, 204–05 (2012) (noting that the Court's exercise of jurisdiction was "consistent with the fact that parts or theories of a claim can be decided finally and subject to appeal to the Court, while other theories or parts of the same claim are remanded to the RO for additional development" and did not contravene *Cerullo*'s prohibition of court and agency action on the same issues). Most importantly, whatever difficult questions of applying longstanding precedent to evolving law may await us, the question before the Court today is an easy one. By taking unilateral action on an issue at the heart of this appeal—action obviously aimed at foreclosing a judicial answer to the reconsideration question the Court posed for discussion at oral argument—the Board violated *Cerullo*.

What's more, the Board and the Secretary know that the unilateral action here was improper. The Board explains to claimants: "If you file a Notice of Appeal with the Court before you file a motion with the Board, *the Board will not be able to consider your motion without the Court's permission or until your appeal at the Court is resolved*." R. at 6 (emphasis added). VA's

appeals manual instructs that a claimant's submission that is related to an issue already before the Court is not to be processed beyond being forwarded to the litigation staff. M21-5, ch. 7, sec. J.1.d. Even after the Board's unilateral action, the Secretary acknowledged, at oral argument, that the reconsideration issue was before the Court. When our dissenting colleague asked how this decision should be written, the Secretary expressly suggested that the Court "hold that if a notice of disagreement form is filed, the Board should determine whether the duty to sympathetically and liberally read and construe pro se pleadings would require it to interpret this particular notice of disagreement as a motion for reconsideration." OA at 45:10-45:34. And that is what the Court is doing.[7]

## C. Conclusion

A panoramic view of the landscape here is unsettling. The RO ignored the Board's order to determine substitution and VA denied Ms. Encarnacion's right to notice and an opportunity to choose whether to be substituted. When she submitted her July 2018 NOD, VA processed it as an appeal of the RO's June 2018 implementing decision. Twenty months into Ms. Encarnacion's appeal to this Court and 2 weeks before oral argument, the Board disregarded foundational law and took unilateral action to reclaim jurisdiction to head off a decision by the Court that might answer a question the Court had posed regarding whether VA had a duty to sympathetically construe the appellant's NOD as a motion for reconsideration. The Court declared that the Board's unilateral action was null and ordered that, for any such action to be effective while the matter remained pending before the Court, the Board must move for remand so it could take the action, "in accordance with the procedures spelled out in *Cerullo*, 1 Vet.App. at 200-01." Court Order, Oct. 21, 2022. The Board ignored that order. Nonetheless, the Secretary suggested (at oral

---

[7] The dissent's agreement with the parties' statements at oral argument on the application of *Cerullo* highlights the importance of adherence to that case. The appellant argued that the Court should remand the case with an order "direct[ing] VA to issue a decision on substitution and then proceed with the claims with the proper notice," which would take the case back years before the May 2018 Board decision. OA 20:42-20:52. But the appellant also expressed concern that, based solely on the Secretary's letter saying he will docket it to consider reconsideration, "it's not clear how that's going to proceed," since it has "taken decades for the Board to even acknowledge [the appellant's claims]" and the appellant is concerned that if she appeals the Board's reconsideration decision the Secretary will "argue that reconsideration was unlawful because it was done while some of the issues were pending before this Court." OA 19:18-20:39. And the Secretary suggested the very Court decision the Secretary then said the Court had no jurisdiction to render. After the Court remanded the case for the Board to consider whether the appellant's NOD amounted to a request for reconsideration, as the Secretary said the Court should do, the Secretary argued that VA's decision to treat the NOD as a motion for reconsideration had stripped the Court of jurisdiction—an assertion that *Cerullo* expressly rejected. 1 Vet.App. at 198. We are not holding this up to flex our muscles, *post* at 30; we must exercise, preserve, and insist on the Court's jurisdiction to secure compliance.

argument) that the Court decide that the Board should determine whether the NOD amounted to a motion for reconsideration. Then, when the Court so decided, *Encarnacion v. McDonough*, 36 Vet.App. 31, 37–38 (2023), the Secretary moved for reconsideration and argued that the Court had no jurisdiction to do so. Now, on reconsideration clarifying the Court's decision and its grounding on *Ratliff* and *Cerullo*, the dissent joins VA's "no jurisdiction" chorus.

It is difficult to hear fair process and independent judicial review in their song. What echoes is the admonition of our predecessors that acceding to VA's assertion that it has the power to unilaterally order reconsideration of an issue before the Court "would give [VA] the power to defeat meaningful judicial review and thereby subvert the intention of Congress in enacting the Veterans' Judicial Review Act." *Cerullo*, 1 Vet.App. at 198. This decision must reaffirm that fidelity to the Court's creation and function—to provide independent judicial review—requires that *Cerullo* be followed and fairness requires that *Ratliff* be applied.


FALVEY, *Judge*, concurring in part and dissenting in part: I agree with the majority that the Board correctly determined that Ms. Encarnacion could not appeal a ministerial rating decision. But I disagree with the majority's conclusion that the Board should have assessed, as part of its decision, whether the July 2018 NOD was a motion for reconsideration (MFR). And thus I respectfully disagree with the majority's decision to remand.

To start, a remand appears to serve little purpose and it will not affect Ms. Encarnacion's claim. VA informs us that the Chairman has construed the July 2018 NOD as an MFR. If the Chairman grants reconsideration, Ms. Encarnacion can pursue her claim before VA. And if the Chairman denies her MFR, she can appeal the May 2018 Board decision to the Court. A remand does not affect either of these outcomes.

If anything, a remand only adds steps to the process and orders the Board to determine whether the July 2018 NOD is an MFR, a determination that the Chairman has already made. But rather than let the Chairman act on the MFR, the panel decision today puts Ms. Encarnacion a step back into a strange limbo so that the Board can figure out how to refer a matter to the Chairman based on an improper appeal from a decision over which the Board lacks jurisdiction. Ms. Encarnacion would be better off if we affirmed the Board decision on appeal and let the Chairman act on the motion. That seems like the right thing to do—let her case get to a resolution as quickly as possible.

More importantly, I do not believe the decision to remand is legally sound. First, Ms. Encarnacion did not raise the issue. In briefing, she did not argue that the Board erred by not considering whether the July 2018 NOD was an MFR. Instead, we injected this issue into the appeal when we ordered the parties to be prepared to discuss it at oral arguments. But we should not "takeover [an] appeal" by departing from the issues framed for decision by the parties. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020). "[O]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment). That's why "[w]e do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties." *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc). And even after the Court raised the issue here, Ms. Encarnacion still didn't take the bait at oral argument to argue that the Board erred by failing to consider whether her July 2018 NOD was an MFR.

What's more, it is unclear how the majority obtains jurisdiction to say that the Board erred in not addressing whether the July 2018 NOD was an MFR. Our jurisdiction derives from decisions of the Board. 38 U.S.C. § 7252(a). And as the majority explained, the Board reviews all decisions of the Secretary made under 38 U.S.C. § 511(a). 38 U.S.C. § 7104(a). But determining whether to grant reconsideration is a Chairman action. 38 U.S.C. § 7103. And "[a]n action by the Chairman is not a decision of the [B]oard." *Mayer v. Brown*, 37 F.3d 618, 620 (Fed. Cir. 1994), *overruled on other grounds by Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998). In other words, reconsideration, and whether something is a document asking for reconsideration, does not fall under the appellate structure laid out in sections 511, 7104, and 7525, at least not without an appeal of the May 2018 decision.

This is not to say that the Chairman is insulated from appellate review; we do have limited jurisdiction to review Chairman actions. *Wolfe v. Wilkie*, 33 Vet.App. 25, 39 (2020). But to review such actions, the Court must have jurisdiction over the underlying Board decision. *Id.*; *see also Mayer*, 37 F.3d at 620 (explaining that the Court may review action by the Chairman if it has jurisdiction through an appeal of the underlying Board decision). We all agree that the decision underlying the July 2018 NOD/MFR–the May 2018 Board decision–is not one over which we have jurisdiction. So how can we exercise jurisdiction over Chairman actions on it?

If the concern is that, without our intervention, Ms. Encarnacion is without remedy, that is simply not true. If Ms. Encarnacion believed that the Chairman's inaction was undue delay, she could have petitioned the Court to issue a writ in aid of our jurisdiction. *See Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) (noting that the Court can issue writs in aid of its jurisdiction). I can think of no better example of where a writ would be appropriate than if VA sat on a motion without action. After all, an unaddressed timely MFR can keep our appellate jurisdiction in limbo. But Ms. Encarnacion did not ask for a writ.

In short, Ms. Encarnacion did not argue that the Board erred by not considering whether her July 2018 NOD was an MFR. She did not appeal the May 2018 Board decision underlying the July 2018 NOD/MFR. And she did not seek a writ arguing that the Chairman's inaction in deciding whether her July 2018 NOD was an MFR amounted to undue delay. So I do not see how or why the Court is addressing whether the Board should have considered whether the July 2018 NOD was an MFR.

To justify our consideration of the issue, the majority reads *Ratliff v. Shinseki*, 26 Vet.App. 356 (2013), to impose on the Board, as part of its appellate review, a duty to decide whether a document is an MFR. But *Ratliff* did not decide the Board's role in the reconsideration process. Instead, the Court in *Ratliff* grappled with whether to dismiss an appeal of a July 2008 Board decision when an NOA was filed with the Court in 2011–well outside the 120-day appeal deadline. *Id.* at 357. The Court noted that within a month of the July 2008 Board decision, Ms. Ratliff sent a document to the RO that said, "I want to appeal," but the RO took no action. *Id.* We explained that even though "the Secretary did not take any action with regard to Ms. Ratliff's August 2008 written disagreement, the finality of the July 2008 Board decision remained abated when she filed an October 2011 NOA with the Court." *Id.* at 361. Thus, we found that the document was a timely, but misfiled, NOA, and allowed Ms. Ratliff's appeal to proceed. *Id.* And we held that,

> when a written expression of disagreement with a Board decision is filed at the RO during the 120–day period to file an NOA, the filing abates finality of the Board decision for purposes of appealing to the Court until . . . the Board Chairman determines the status of the document, that is, whether it is a motion for Board reconsideration, and notifies the claimant of his determination . . . .

*Id.* at 360-61. But the Board's role in deciding whether a filing is an MFR was not at issue in *Ratliff*, nor did the Court decide the matter. Thus, as far as the majority relies on *Ratliff* to impose on the Board a duty as part of its appellate review process to consider whether a document is an MFR, it at best relies on dicta to do so. *See United States v. Scophony Corp. of America*, 333 U.S. 795, 809

(1948) ("Any such ruling necessarily could be no more than dictum, since no such issue was presented by the facts.").

At their core, our cases like *Ratliff* or *Kouvaris v. Shinseki*, 22 Vet.App. 377 (2009), deal with situations when a claimant has appealed a Board decision to this Court, but the finality of the decision on appeal has been abated by the filing of a document that could be considered an MFR. They do not deal with whether the Board errs by not sua sponte deciding if a document is an MFR, like the majority concludes here.

This is not to say that the Board or the RO acted correctly by ignoring Ms. Encarnacion's filings. But when that happened in *Ratliff*, it did not call for a remand. And for good reason–much as here, a remand would have been pointless. That's because referral of the motion has already happened and Ms. Encarnacion's MFR is already with the Chairman. Still, the majority invokes *Cerullo v. Derwinski*, 1 Vet.App. 195 (1991), to argue that VA's recent actions over the MFR are invalid. Although *Cerullo* can be broadly read to stand for the principle that the Board may not consider an issue over which the Court has exercised jurisdiction, that principle is inapplicable here.

*Cerullo* dealt with "whether the Chairman of the Board of Veterans' Appeals may order reconsideration of a [Board] decision after an NOA *from that decision* has been filed with this Court." *Id.* at 196 (emphasis added). But that's not what happened here. Ms. Encarnacion has not even tried to appeal the May 2018 Board decision to this Court. So again, how can we exercise jurisdiction over that unappealed decision and the July 2018 NOD/MFR of that decision, and prohibit VA from acting on it?

On this point, both parties completely agree that *Cerullo* does not prohibit the Chairman's recent actions construing the July 2018 NOD as an MFR because the underlying decision–the May 2018 Board decision–is not on appeal. *See* Oral Argument (OA) 18:45-19:20, *Encarnacion v. McDonough*, U.S. Vet. App. No. 21-1411 (held Oct. 27, 2022), https://www.youtube.com/watch?v=F3kCvKwo9nQ (counsel for Ms. Encarnacion arguing that *Cerullo* does not apply and her current appeal at the Court does not affect the Board's reconsideration of the May 2018 Board decision); *id.* at 27:44-27:54 (counsel for the Secretary stating that "we agree with the appellant that *Cerullo . . .* would not be applicable here because the 2018 decision has not yet been appealed to the Court"). I too agree with the parties.

Ms. Encarnacion has appealed the June 2020 Board decision. Nothing suggests that the Chairman plans to reconsider that decision. And why would he? We all agree it's correct. Instead, the Chairman may order reconsideration of the May 2018 Board decision. No NOA from that decision has been filed with the Court. *Cerullo* simply does not prohibit the Chairman from reconsidering a decision that we agree is not on appeal and that we have no jurisdiction over. Moreover, any reading of *Cerullo* as prohibiting the agency from acting on any issue that may relate to any issue before the Court is too broad and legally incorrect.

For starters, the Veterans Appeals Improvement and Modernization Act allows for claims to be in multiple places at once. So an interpretation of *Cerullo* that prohibits VA from taking action on any issue when the same issue is here would throw a major part of the modernized appeals system out the window. Congress specifically allowed for concurrent proceedings on the same issue before the agency and a federal court. *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1144 (Fed. Cir. 2021).

And, even under the legacy appeals process, VA could split different theories of entitlement to have the same issue of service connection or effective date simultaneously pending before various parts of the system. *Cerullo* could not reasonably be read as prohibiting VA from resolving a remanded TDIU effective date under 38 CFR § 4.16(a) on a schedular basis while this Court considers whether the earlier effective date could be granted on an extraschedular basis under 4.16(b). True, VA could moot the effective date question by rendering a decision. But no one would read *Cerullo* as prohibiting such a result simply because effective date was before this Court and VA at the same time.

Ultimately, we are exceeding our jurisdictional limits to adjudicate an argument that neither party raised to needlessly remand Ms. Encarnacion's claim. Ms. Encarnacion's path forward is unaffected by our disposition here. If anything, a remand puts her a step further back on that path. And holding her up to flex our jurisdictional muscles and prove an unnecessary point to the Board is not doing the right thing in the right way for the right reason. Thus, I respectfully dissent.